**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Ruth Alston BREEDING, Defendant–Appellant.**

No. 95–6231.

United States Court of Appeals, Sixth Circuit.

Argued June 6, 1996.

Decided March 26, 1997.

M. Neil Smith, Asst. U.S. Attorney (argued and briefed), United States Attorney's Office, Greeneville, TN, for Plaintiff–Appellee.

W. Thomas Dillard (briefed), Wade Davies (argued and briefed), Ritchie, Fels & Dillard, Knoxville, TN, for Defendant–Appellant.

Before: MERRITT and COLE, Circuit Judges; DUGGAN, District Judge.*

---

* The Honorable Patrick J. Duggan, United States District Judge for the Eastern District of Michigan, sitting by designation.

DUGGAN, District Judge.

Appellant Breeding pled guilty to making and using a materially false document before the U.S. Department of Health and Human Services in violation of 18 U.S.C. § 1001. A presentence investigation report ("PSI") was prepared and both the United States and appellant filed objections. Nowhere in the body of the PSI was there a recommendation regarding the assessment of costs of imprisonment. However, attached to the PSI was a document entitled "Worksheet D" which stated that the cost of imprisonment was $1,734.00 monthly and the cost of supervised release was $180.90 monthly. The district court sentenced appellant to 16 months imprisonment, a fine of $65,500.08, and 3 years supervised release. The fine included $28,469.28 for costs of imprisonment and $7,030.80 for costs of supervised release.

On appeal, appellant argues that the district court erred in assessing a fine to cover the costs of imprisonment and supervised release pursuant to United States Sentencing Guidelines § 5E1.2(i). Appellant contends that § 5E1.2(i) is invalid because the Sentencing Commission exceeded the scope of its authority in directing district courts to assess fines for costs of incarceration.

### *Discussion*

### *I. Waiver*

■ This precise issue has come before panels of this Court several times. While most of our sister circuits have addressed attacks on the assessment of costs of imprisonment under § 5E1.2(i), this Court has several times refused to reach the issue on the merits because the defendant waived any right to appeal the issue by failing to raise the issue before the district court in the first instance. *United States v. Blandford,* 33 F.3d 685, 711 (6th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1821, 131 L.Ed.2d 743 (1995); *United States v. Watroba,* 56 F.3d 28 (6th Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 269, 133 L.Ed.2d 191 (1995); *United*

*States v. Lanier,* 33 F.3d 639, 663–64 (6th Cir.1994), *vacated and pet. for reh'g en banc granted on other grounds,* 43 F.3d 1033 (6th Cir.1995), *on reh'g en banc,* 73 F.3d 1380 (6th Cir.1996). It is undisputed that appellant did not object to the district court's imposition of a fine under § 5E1.2(i).

Appellant contends that the present case is different from our earlier decisions finding waiver because in this case appellant was never put on any notice that a fine for the costs of imprisonment would be imposed. Appellant correctly notes that the PSI did not recommend a fine for costs of confinement and also notes that the government did not object to the absence of such a recommendation. Moreover, appellant contends that she had no opportunity to object at the sentencing:

> The very first time there was mention of the potential for an additional fine based on cost of incarceration occurred when the court imposed judgment. It was clear at that time that the time for argument was over. Mrs. Breeding simply could not waive her opportunity to object when she was never given such an opportunity.

(Appellant's Rep. Br. at 1–2) (citations omitted).

In *United States v. Hickey,* 917 F.2d 901, 906 (6th Cir.1990), this Court held that where the district court fails to provide an opportunity for objections after the pronouncement of a sentence, waiver should not be found. Because we are not convinced that appellant had an opportunity to object to the imposition of a fine under § 5E1.2(i), this Court does not find that appellant has waived her right to appeal this issue.

## II. The Merits

◼ Appellant contends that the Sentencing Commission exceeded its authority in calling for the imposition of fines covering the costs of imprisonment. In support of her position, appellant relies on *United States v. Spiropoulos,* 976 F.2d 155, 166 (3d Cir.1992). The Third Circuit stands alone among its sister circuits as every circuit which has addressed this issue, both pre- and post-*Spiropoulos,* has affirmed the validity of § 5E1.2(i). *See, United States v. Hagmann,*

950 F.2d 175, 186 (5th Cir.1991), *cert. denied,* 506 U.S. 835, 113 S.Ct. 108, 121 L.Ed.2d 66 (1992); *United States v. Turner,* 998 F.2d 534, 536–538 (7th Cir.), *cert. denied,* 510 U.S. 1026, 114 S.Ct. 639, 126 L.Ed.2d 598 (1993); *United States v. Leonard,* 37 F.3d 32, 39–40 (2nd Cir.1994); *United States v. May,* 52 F.3d 885, 890–92 (10th Cir.1995); *United States v. Zakhor,* 58 F.3d 464, 465–68 (9th Cir.1995); *United States v. Price,* 65 F.3d 903, 908–09 (11th Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 2547, 135 L.Ed.2d 1067 (1996). In fact, a panel of this Court, *in dicta,* specifically rejected *Spiropoulos* and followed the decisions of the Fifth, Seventh and Tenth Circuits cited above, although that decision was later vacated on other grounds and a rehearing en banc was granted. *Lanier,* 33 F.3d at 664. This Court now joins the majority of the circuits in holding that the Sentencing Commission did not act outside of its authority in promulgating § 5E1.2(i).

In *Spiropoulos,* the Third Circuit first argued that Sentencing Guideline 5E1.2(i) is invalid because the Sentencing Reform Act did not *specifically* refer to recouping the costs of imprisonment as an appropriate goal of sentencing. *Spiropoulos,* 976 F.2d at 165. However, merely because the Act does not specifically mention recouping costs does not end the discussion, for the language of the statute is intended to allow courts to impose sentences in the furtherance of the legislature's intent. Specifically, according to the Act, the Sentencing Commission must consider as one of several factors "the nature and degree of the harm caused by the offense," 28 U.S.C.A. § 994(c)(3), and must assure that sentencing policies "reflect the seriousness of the offense [and] provide just punishment for the offense." 18 U.S.C.A. § 3553(a)(2)(A).

> "Although section 3553 commands courts, not the Sentencing Commission, to consider the offense's seriousness and just punishment in issuing sentences, 28 U.S.C. § 991(b)(1)(A) requires the Commission to promulgate guidelines that assure the meeting of the purposes of sentencing as set forth in section 3553(a)(2)."

*Zakhor,* 58 F.3d at 466.

The Act also mandates that the members of the Commission create sentencing policies

that consider "the deterrent effect a particular sentence may have on the commission of the offense by others," 28 U.S.C.A. § 994(c)(6), and to consider "the need for the sentence imposed to afford adequate deterrence to criminal conduct." 18 U.S.C.A. § 3553(a)(2)(B); *see* 28 U.S.C.A. § 991(b)(1)(A). In *Turner,* the Seventh Circuit explained how a fine for costs of imprisonment provides added deterrence to criminal activity:

> The Guidelines call for longer sentences as the harm caused by the offense rises; longer sentences (or sentences in more secure custody) are more costly; thus the costs of confinement rise with the seriousness of the crime, and a fine based on these costs therefore reflects the seriousness of the offense. Moreover, higher fines are more potent deterrents to crime. Section 5E1.2(i) increases the fine, and therefore increases deterrence.

*Turner,* 998 F.2d at 536. The Third Circuit's decision in *Spiropoulos* fails to acknowledge the deterrent effect of imposing a fine related to the costs of imprisonment. *See Spiropoulos,* 976 F.2d at 165. As the *Turner* court stated,

> This is equivalent to asserting that higher fines do not increase deterrence, a proposition that leaves us flabbergasted. The system of penalties under the Guidelines is constructed on the belief that higher fines, and longer sentences of imprisonment, are more effective deterrents.

*Turner,* 998 F.2d at 536. In *Zakhor,* the Ninth Circuit also stated that the policy of increasing sentencing fines according to the costs of imprisonment, "deters criminal conduct by making the potential criminal internalize all the costs of such conduct." *Zakhor,* 58 F.3d at 466. Therefore, a § 5E1.2(i) fine "is closely related, not just rationally related, to the purpose of just punishment," and it is "likewise closely related to deterrence, because the requisite punishment to satisfy deterrence should increase with the severity of the crime." *Id.* at 467.

The Third Circuit in *Spiropoulos* was also troubled by the idea that Congress had instructed the Commission to "study the feasibility of requiring prisoners incarcerated in Federal correctional institutions to pay some or all of the costs incident to the prisoner's confinement." Pub.L. No. 100–690, § 7301, 102 Stat. 4463 (1988)(codified at 18 U.S.C.A. § 4007 (West Supp.1996)). Such a command implies, according to the *Spiropoulos* court, that "study" is the only permissible activity for the Commission. *Spiropoulos,* 976 F.2d at 166. In response, the Seventh Circuit again appropriately noted:

> The statute does not create such a restriction. Section 5E1.2(i) was part of the Guidelines on their promulgation in 1987, before the enactment of § 7301. Section 7301 does not mention or subtract from any of the Commission's permanent legislation, and we all know the canon that repeals by implication are disfavored. The authors of § 7301 likely were unaware of § 5E1.2(i). At all events, what better way to study something than to try it out and see what happens?

*Turner,* 998 F.2d at 537.

Appellant argues that § 5E1.2(i) can only apply to offenses which occurred after Congress explicitly provided for fines based on the costs of imprisonment in 1994. Pub.L. No. 103–322, § 20403(b), 108 Stat. 1796, 1825 (1994)(codified at 28 U.S.C.A. § 994(y)). In *Zakhor,* the defendant made a similar argument, asserting that "because Congress created an explicit authorization for section 5E1.2(i) in 1994, there must not have been any such authorization before that date." *Zakhor,* 58 F.3d at 467. The *Zakhor* court responded to this argument by stating:

> Congress may amend a statute simply to clarify existing law, to correct a misinterpretation, or to overrule wrongly decided cases. Thus, an amendment to a statute does not necessarily indicate that the unamended statute means the opposite.

*Id.* (quoting *Hawkins v. United States,* 30 F.3d 1077, 1082 (9th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 2576, 132 L.Ed.2d 827 (1995)).

The Third Circuit was also disturbed by the fact that while the text of § 5E1.2(i) calls for a sentencing fine "at least sufficient to pay the costs [of imprisonment] to the government ...," the money collected from de-

fendants goes into a victim's compensation fund pursuant to 42 U.S.C. § 10601. *Spiropoulos,* 976 F.2d at 166. Because the *Spiropoulos* court believed that the guideline intended for the government to recoup its costs of confinement, the fact that the money did not go to the government demonstrated that § 5E1.2(i) could not serve its stated purpose. The Ninth Circuit rejected a similar argument in *Zakhor,* stating that "the government's use for his fine is irrelevant to the government's purpose for levying the fine against him." *Zakhor,* 58 F.3d at 468. The Seventh Circuit also argued that once the function of § 5E1.2(i) is understood as deterrence, the concern of the Third Circuit "loses force:"

> Deterrence does not depend on what the government does with the money; it is enough that the offender be deprived of the wealth. From a defendant's perspective, the effect is the same if the money goes to victims, the Bureau of Prisons, or an incinerator.

*Turner,* 998 F.2d at 537.

This Court, therefore, rejects the Third Circuit's decision in *Spiropoulos* and follows the majority of our sister circuits in holding that the Sentencing Commission did not exceed its authority in enacting § 5E1.2(i).

### III. Factual basis for imposition of fine

■ Appellant also argues that the district court did not have an adequate factual basis to determine the actual costs of imprisonment. This argument is without merit. As stated above, Worksheet D, which was attached to the PSI, represented that the monthly costs of imprisonment and supervised release were $1,734.00 and $180.90, respectively. Although the district court appears to have imposed a fine slightly in excess of this amount, this Court notes that § 5E1.2(i) calls for the mandatory imposition of an additional fine that *at least* covers the costs of confinement or supervised release. The district court did impose such a fine and had a factual basis for its determination of the approximate costs of confinement and supervised release.

### IV. Conclusion

For the reasons set forth above, the imposition of the fine under § 5E1.2(i) is AFFIRMED.